1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                        15 Cr. 85 (AJN)

5  ANTHONY LETTERIO,

6               Defendant.

7  ------------------------------x

8                                    New York, N.Y.
                                     March 16, 2017
9                                    10:20 a.m.

10

   Before:
11
                    HON. ALISON J. NATHAN,
12
                                        District Judge
13

14                      APPEARANCES

15  PREET BHARARA
        United States Attorney for the
16      Southern District of New York
    BY:  JESSICA K. FEINSTEIN
17      Assistant United States Attorney

18  THE C.H. SCHOLAR LAW FIRM
        Attorneys for Defendant
19  BY:  CALVIN H. SCHOLAR

20

21

22

23

24

25

1            (Case called)

2            MS. FEINSTEIN:  Good morning, your Honor.  Jessica

3   Feinstein for the government.

4            THE COURT:  Good morning.

5            MR. SCHOLAR:  Good morning.  Calvin Scholar for

6   Mr. Letterio.

7            THE COURT:  Good morning, Mr. Scholar.

8            Good morning, Mr. Letterio.

9            A bit of a late start, Mr. Scholar.

10           MR. SCHOLAR:  Yes, Judge.  The order I received said

11  318, so I went to courtroom 318.

12           THE COURT:  That was a mistake.  No one directed you

13  here?

14           MR. SCHOLAR:  Judge, I went up to courtroom 906, and

15  that's when the sign said 706, so I came down.

16           THE COURT:  No one in 318 sent you here?

17           MR. SCHOLAR:  No, Judge.

18           THE COURT:  Good to know.  Thank you for adjusting.

19           We are here today for a sentencing in the United

20  States versus Letterio, 15 Cr. 95.  In preparation for today's

21  proceedings I've reviewed the probation report which is dated

22  November 16, 2016.  I've also received and reviewed the

23  following additional submissions:

24           I have the defense's submission.  Mr. Scholar, I don't

25  have a date on the submission.  Did you do an ECF filing?

H3COLETS

1          MR. SCHOLAR:  I did, Judge.

2          THE COURT:  Do you recall what date it was?

3          MR. SCHOLAR:  That was March 7th.

4          THE COURT:  I'll call this the March 7th, 2017

5    submission by the defense.  Attached to the memorandum is a

6    large set of exhibits from Exhibit 1 through Exhibit 43.  This

7    consists of many letters from family members, friends, and

8    other community members who know Mr. Letterio.  Other exhibits

9    include photographs of family members, a later exhibit has

10   photographs from a GED graduation class at the MCC, there are

11   educational documents for both Mr. Letterio and his children,

12   there are work performance evaluations for Mr. Letterio from

13   the prison, there are documents related to the dismissal of the

14   Bronx assault case, there are a large number of MCC

15   certificates of completion, there's also a letter from counsel

16   making objections to the PSR, which are also made in the

17   sentencing memorandum.

18          I did receive a supplemental memorandum by cover

19   letter from Mr. Scholar dated March 12, 2017, and that was just

20   some additional supplemental exhibits, including some

21   additional MCC certificates of completion, there's a letter

22   confirming Mr. Letterio's participation in the nonresidential

23   drug treatment program, and there are some additional letters

24   from friends of Mr. Letterio.

25          Then I have the government's submission, which is

1    dated March 10th, 2017.

2              Counsel, is there anything else I should have in front

3    of me for purposes of sentencing?

4              MS. FEINSTEIN:  No, your Honor.

5              MR. SCHOLAR:  No, your Honor.  I did have a chance to

6    make a hard copy of the exhibits I submitted on the 14th.  I'm

7    not sure if the Court wants it?

8              THE COURT:  I printed hard copies so I'm set.  Thank

9    you, sir.

10             Can you confirm that you each received the other's

11   submissions, please?

12             MS. FEINSTEIN:  I can.

13             MR. SCHOLAR:  Yes, your Honor.

14             THE COURT:  All right.  Turning to the presentence

15   report.

16             Mr. Scholar, I know that you have, but for the record,

17   have you read the presentence report and discussed it with your

18   client?

19             MR. SCHOLAR:  I have, your Honor.

20             THE COURT:  We'll turn in a moment to the objections

21   that you submitted to the probation officer that I gather were

22   not addressed.

23             Let me first ask, Mr. Letterio, did you have an

24   opportunity to review the presentence report and discuss it

25   with Mr. Scholar?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Ms. Feinstein, for the record, did you

3    review the presentence report?

4          MS. FEINSTEIN:  I did.

5          THE COURT:  First, let's take your objections,

6    Mr. Scholar.  They're the ones that you've indicated in your

7    sentencing memorandum.

8          MR. SCHOLAR:  Yes, your Honor.  Do you want me to read

9    them into the record?

10         THE COURT:  No.  Let me ask, Ms. Feinstein, does the

11   government have any objections to any of the noted objections

12   made by defense counsel?

13         MS. FEINSTEIN:  A couple things, your Honor.  First --

14         THE COURT:  Let me get them in front of me.

15         MS. FEINSTEIN:  Yes.

16         THE COURT:  I'm on page 8 of Mr. Scholar's sentencing

17   memorandum.

18         MS. FEINSTEIN:  Yes.  Page 8.  I do note that

19   paragraph 4, which is on page 4 of the PSR, which recounts the

20   charges in Count Three does incorrectly list the defendant's

21   name.  We agree that that should be stricken.  We have no

22   objections to --

23         THE COURT:  I'm sorry.  Which paragraph?

24         MS. FEINSTEIN:  That's paragraph 4 on page 4, which

25   refers to Count Three.  And on page 8, that's of his sentencing

 1    memorandum, that's paragraph 3.

 2            THE COURT:  Okay.  So paragraph 3.  You agree with

 3    that?

 4            MS. FEINSTEIN:  We agree with that.  We have no

 5    objection to paragraphs 1 and 2.

 6            Paragraph 4, we disagree with Mr. Scholar regarding

 7    the text messages and statements on the text messages.

 8            THE COURT:  You cite those --

 9            MS. FEINSTEIN:  We do.

10            THE COURT:  -- at least some of those text messages in

11    your sentencing memorandum.

12            MS. FEINSTEIN:  That's correct.

13            Paragraph 5, I actually think there's no real dispute

14    here between the parties that Mr. Letterio is not personally

15    responsible for the amount of drugs listed, 400 to

16    700 kilograms of marijuana, that's the amount of the whole

17    conspiracy.  He was only personally responsible for a portion

18    of that, but again, he legally is liable for the entirety of

19    the conspiracy.

20            THE COURT:  Well, on that point, Mr. Scholar, that's

21    correct, right, and was what was anticipated with the plea

22    agreement?

23            MR. SCHOLAR:  Yes, Judge, that's correct.

24            THE COURT:  Is there any change to the PSR that you're

25    requesting via paragraph 5?

1          MS. FEINSTEIN:  No, your Honor.  By the way --

2          THE COURT:  That was for Mr. Scholar.

3          MS. FEINSTEIN:  Oh, sorry.

4          THE COURT:  Mr. Scholar, are you requesting a change

5     to the PSR?

6          MR. SCHOLAR:  No, your Honor, not with respect to that

7     matter.

8          THE COURT:  Right.

9          MS. FEINSTEIN:  As for the rest, no objections, your

10     Honor.

11          THE COURT:  All right.  What we'll do is with respect

12     to -- I guess paragraph 4 is the open one, but first,

13     Mr. Scholar, for paragraphs 1, 2, 3, 6, 7, and 8, you've noted

14     these points, but do you want to make specific requests for

15     changes to the PSR?

16          MR. SCHOLAR:  No, your Honor, not with respect to

17     those paragraphs.

18          THE COURT:  I think the open question is paragraph 4

19     where there's a disagreement.  The government does rely on

20     those texts in its sentencing memorandum in support, I think,

21     of a few points.

22          One, Ms. Feinstein, tell me if you agree, one, it sort

23     of puts some content behind the three-point enhancement for

24     leadership because the government contends it shows

25     Mr. Letterio directing at least one person with respect to the

```
 1    drug conspiracy.  Another point made, I think it sort of
 2    suggests that Mr. Letterio was voicing frustration with
 3    individuals who were potentially cooperating with law
 4    enforcement.  That seems to be not an insignificant point.
 5              I think, Mr. Scholar, the question to you is whether
 6    you're seeking to prove up the counterassertion contained in
 7    paragraph 4 through some sort of Fatico.
 8              MR. SCHOLAR:  No, your Honor.  Our objection was
 9    basically just to the sentence that that text message as
10    referenced in the --
11              THE COURT:  That specific text message?
12              MR. SCHOLAR:  That specific text message, if that was
13    what the probation department was relying on, there was an
14    alternate set of facts or information that Mr. Letterio had.
15              THE COURT:  Let me just look at paragraph 15.
16              MS. FEINSTEIN:  It's paragraph 21, your Honor, on
17    page 15.
18              THE COURT:  Thank you.
19              So Mr. Scholar, you object regarding the sale of
20    narcotics language in that paragraph, is that essentially
21    the --
22              MR. SCHOLAR:  Yes, Judge.
23              THE COURT:  I'm trying to think.  Are these
24    specific -- there are other texts that you reference in your
25    sentencing memorandum.
```

1       MS. FEINSTEIN:  Yes, your Honor.  In paragraph 21, it

2   talks about a text on April 23rd, 2016.

3       THE COURT:  Yes.

4       MS. FEINSTEIN:  I will note that -- sorry, in the PSR.

5   And I doublechecked this last night, and I'm sorry that this is

6   our fault we didn't catch this, but the person who sent the

7   message, "Stacked the trap.  Need a rack or better for

8   Thursday," is the defendant and not Mr. Thomas.  So just the

9   names are switched in that paragraph.

10      THE COURT:  So it should read "Letterio sent a text

11  message".

12      MS. FEINSTEIN:  Yes.  And I did doublecheck this last

13  night in Mr. Thomas' phone, which is where this comes from.  We

14  think this is plainly narcotics language.  "Rack" refers to an

15  amount of drugs, and a "trap" is a secret place where you store

16  narcotics.  And in context with all the other text messages

17  that we cite, we think there's no basis for suggesting

18  otherwise, your Honor.

19      THE COURT:  So Mr. Scholar, it's a procedural question

20  to you whether you would like some sort of Fatico hearing to

21  support the assertion made in paragraph 4 on page 8 of your

22  sentencing memorandum.

23      MR. SCHOLAR:  Judge, I've spoken to Mr. Letterio, and

24  he would request a hearing with respect to those points.

25      THE COURT:  All right.  Then we'll come back for a

1    hearing.  Do you want to take a little bit of time,

2    Mr. Scholar?

3              MR. SCHOLAR:  Thank you, your Honor.

4              THE COURT:  I'll step down for a few moments.

5              (Recess)

6              THE COURT:  Mr. Scholar, have you had an opportunity

7    to discuss the issue with your client?

8              MR. SCHOLAR:  Yes, I have, your Honor, and I believe

9    Mr. Letterio would like me to speak to the government.

10             THE COURT:  Okay.

11             (Pause)

12             MR. SCHOLAR:  Judge, after speaking with the

13   government, I would have a question as to whether the Court

14   felt that that text that's listed in paragraph 21 was material

15   with regards extending?

16             THE COURT:  I'm not certain it is.  I have in mind

17   some of the messages cited in the government's brief.  I can't

18   say any one of them is material, and I'm not sure that this is

19   one of the texts cited or not.

20             Ms. Feinstein, do you recall?

21             MS. FEINSTEIN:  It is one of the texts cited, but

22   there are several there cited in addition, your Honor.

23             THE COURT:  No.  It's interesting that the names are

24   reversed here, because as it was in the PSR, and now I

25   recognize it, it was suggesting that Mr. Thomas was directing

1    Mr. Letterio, but in fact, if the names are reversed, it's

2    Mr. Letterio directing Mr. Thomas.

3        I don't need to rely on this email in any way.  I

4    mean, indeed, by admission -- correct me if I'm right,

5    Mr. Scholar -- Mr. Letterio admits to directing Mr. Thomas in

6    the narcotics activity that's the basis for the three-point

7    enhancement, and so if that's the case, this text adds nothing

8    to that basic factual proposition.

9        MR. SCHOLAR:  Judge, I've spoken to Mr. Letterio, and

10   he indicates he would like to proceed with sentencing today.

11       THE COURT:  I'll state again clearly, I think we

12   should resolve how to deal with this paragraph, both because

13   I'm not going to rely on it and because it's wrong, but I'll

14   state clearly that I'm not relying in my sentencing conclusion

15   on the April 23rd, 2016 text message.

16       Ms. Feinstein, what do you propose just with respect

17   to the PSR?

18       MS. FEINSTEIN:  If your Honor is not relying on it

19   then what I would propose, since it's incorrect as it stands,

20   is just striking that text from the PSR.

21       THE COURT:  I agree with that practical solution.

22       Mr. Scholar, do you agree with that?

23       MR. SCHOLAR:  Yes, Judge, I agree with that.

24       THE COURT:  In a sense, I'm granting the defense's

25   request.  I am striking paragraph 21 of the PSR on page 15.

 1              As we've discussed, the other paragraphs that you

 2      noted, the government agrees with your objections, but

 3      Mr. Scholar, you're making no specific request for alterations

 4      to the PSR on any of those points; is that correct?  Other than

 5      the striking of paragraph 21.

 6              Well, and I'm sorry, that's not true.  The point in

 7      paragraph 3 of your sentencing memorandum which notes, as the

 8      government agrees, that the defendant, Mr. Letterio, was not

 9      charged in Count Three of the indictment, so I will make that

10      change, as well, to the PSR.

11              MR. SCHOLAR:  And Judge, with respect to paragraph 20,

12      the reference to the ecstasy sale, we had also pointed that out

13      to the Court in our sentencing memorandum.

14              THE COURT:  What paragraph in your memorandum is that?

15              MR. SCHOLAR:  That is page 9, and that's the third

16      full paragraph.

17              THE COURT:  Of your sentencing memorandum?

18              MR. SCHOLAR:  Yes, Judge.  It's in the third full

19      paragraph on page 9.

20              THE COURT:  Not one of the numbered paragraphs?

21              MR. SCHOLAR:  No, Judge.

22              THE COURT:  I see.  "Insufficient evidence to support

23      the conclusion that Mr. Letterio participated in a sale of

24      ecstasy pills," and that's in reference to what paragraph in

25      the PSR?

1        MR. SCHOLAR:  That's paragraph 20 on page 15.

2        THE COURT:  That reads that, "On April 23rd, 2015, law

3   enforcement conducted a controlled buy of 17 ecstasy pills from

4   Anthony Letterio at a named address which was eight blocks from

5   BMB's B Road spot," and it goes on to say, "The sale was set up

6   by Letterio's brother, Calvin Rugs," and then goes on.

7        So the defense's request is that those first few

8   sentences of paragraph 20 are struck?  Is that the request?

9        MR. SCHOLAR:  That would be the request, Judge.

10       THE COURT:  Ms. Feinstein?

11       MS. FEINSTEIN:  We're not prepared to prove that at

12   this time, so your Honor can strike the first, I guess it's two

13   sentences from paragraph 20.

14       THE COURT:  Thank you.  I will strike the first two

15   sentences from paragraph 20 of the PSR.

16       Any other changes to the PSR requested, Mr. Scholar?

17       MR. SCHOLAR:  No, your Honor.

18       THE COURT:  So other than those alterations that we've

19   discussed, and putting aside for a moment the calculation of

20   the sentencing guidelines, are there any objections to the

21   report regarding factual accuracy, any other objections?

22       MS. FEINSTEIN:  No, your Honor.

23       THE COURT:  And you indicated no, Mr. Scholar?

24       MR. SCHOLAR:  I'm sorry, Judge.  There was one -- a

25   last point in paragraph 83.

1           THE COURT:  Okay, go ahead.

2           MR. SCHOLAR:  It reflects that Mr. Letterio pled

3    guilty to a conspiracy distributing crack as opposed to

4    marijuana.

5           THE COURT:  Yes.  That should be changed.  Paragraph

6    83 should be changed to read "to distribute marijuana" instead

7    of "a detectable amount of crack".

8           MR. SCHOLAR:  That's correct.

9           THE COURT:  Ms. Feinstein?

10          MS. FEINSTEIN:  No objection.

11          THE COURT:  We'll make that change, as well.

12          And I suppose I should strike the ten-year mandatory

13   minimum language as not applicable?

14          MR. SCHOLAR:  Yes, your Honor.

15          THE COURT:  I will strike that, as well, from

16   paragraph 83.

17          Anything else, Mr. Scholar?  Any objections regarding

18   factual accuracy other than what we've discussed and the

19   changes I've made?

20          MR. SCHOLAR:  No, your Honor.  Thank you.

21          THE COURT:  Hearing no further objections with the

22   changes that I've noted to the PSR, I will otherwise adopt the

23   factual recitations set forth in the PSR.  The report will be

24   made a part of the record in this matter and placed under seal.

25   If an appeal is taken, counsel on appeal may have access to the

 1   sealed report without further application to this Court.

 2         Turning to the guideline calculations.  As counsel is

 3   aware, I am no longer required to follow the United States

 4   Sentencing Guidelines, but I still required to consider the

 5   applicable guidelines in imposing sentence and must therefore

 6   accurately calculate the sentencing guideline range.

 7         Here, we have a discrepancy between the PSR's

 8   calculation and the parties' calculation as reflected in the

 9   parties' stipulated guideline range in the plea agreement, as

10   well as in the parties' sentencing submissions.  Both the

11   government and the defendant maintain the stipulated range is

12   correct and the PSR is wrong.

13         There are two points of distinction.  First, as to the

14   offense level, the PSR does not indicate a three-level increase

15   pursuant to 3B1.1 based on the defendant being a manager or

16   supervisor but not an organizer or leader.  So the parties'

17   stipulated range is to include a three-level increase here

18   based on the admission that Mr. Letterio directed at least one

19   member of the narcotics conspiracy, and specifically,

20   Mr. Thomas.

21         That's the government's current position?

22         MS. FEINSTEIN:  That's correct, your Honor.

23         THE COURT:  Mr. Scholar?

24         MR. SCHOLAR:  No objection to that, Judge.

25         THE COURT:  All right.  I will conclude that the

1    enhancement applies here based on the record before me and the

2    parties' agreement that Mr. Letterio managed at least one

3    individual in this large multimember conspiracy.  That is a

4    sufficient record to determine that this enhancement applies.

5         Second, the PSR assesses criminal history points for

6    Mr. Letterio's prior narcotics convictions.  The government

7    states in its memorandum that it would not be able to prove by

8    a preponderance of the evidence that the earlier conduct was

9    part of a different crime.  Based on that statement, I'm

10   required to conclude that the underlying convictions are part

11   of the charged conspiracy and, thus, do not allow for the

12   assessment of additional criminal history points.

13        Have I correctly stated the government's

14   understanding?

15        MS. FEINSTEIN:  That's correct, your Honor.

16        THE COURT:  And Mr. Scholar, your understanding, as

17   well?

18        MR. SCHOLAR:  Yes, your Honor.

19        THE COURT:  So I do make that conclusion that no

20   criminal history points are assessed, given that the earlier

21   conduct was part of the charged conspiracy.

22        I'll state my sentencing calculation and just make

23   sure there are no final objections.

24        The base offense level here is 26 because, using the

25   drug quantity table at 2D1.1, 26 is the base level for an

1   offense here, this conspiracy involving between 400 and

2   700 kilograms of marijuana.

3          I would add three points pursuant to 3B 1.1(b) for the

4   reasons I stated a moment ago, and will subtract three points

5   based on acceptance of responsibility, including the additional

6   point for early acceptance of responsibility.

7          So with adding three and subtracting three, this

8   brings me back to the total offense level of 26.

9          With no criminal history points, the Criminal History

10  Category is I, and this produces a sentencing guideline range

11  of 63 to 78 months.

12         Any objections?

13         MS. FEINSTEIN:  No objection.

14         MR. SCHOLAR:  No objection, Judge.

15         THE COURT:  Based on the parties' agreement, the

16  absence of objection and my independent evaluation of the

17  sentencing guidelines, what I've just stated is my conclusion

18  using the August 1st, 2016 guideline manual.

19         I do find the offense level is 26, Criminal History

20  Category is I, and the sentencing guideline range is 63 to 78

21  months.

22         Your plea agreement indicated that, though both sides

23  are free to argue for a variance from the guideline range,

24  neither party would seek a departure within the guideline

25  system.  Is that correct?

```
 1              MS. FEINSTEIN:  That's correct, your Honor.

 2              MR. SCHOLAR:  Yes, your Honor.

 3              THE COURT:  Nevertheless, I've considered whether

 4     there's an appropriate basis for departure from the advisory

 5     range within the guideline system and did not find any grounds

 6     warranting departure.

 7              So with that, I'm happy to hear, though I have read

 8     the submissions in full, happy to hear any statements from

 9     counsel.

10              Ms. Feinstein, does the government wish to be heard

11     further with regard to sentencing?

12              MS. FEINSTEIN:  We'll rest on our submission, barring

13     any questions from your Honor.

14              THE COURT:  Mr. Scholar.

15              MR. SCHOLAR:  Thank you, your Honor.

16              Your Honor, I would like to acknowledge that there are

17     some family and friends of Mr. Letterio in the audience.

18              THE COURT:  Okay.  I could hear you better at that

19     mic.  I'm not sure if it's the positioning.  If you don't mind.

20              MR. SCHOLAR:  Is that better?

21              THE COURT:  It is.  Thank you.

22              MR. SCHOLAR:  I would also like to acknowledge that

23     there is a representative from the Focus Forward Project here

24     in court on Mr. Letterio's behalf.  And the Focus Forward

25     Project, as you know, is a program that helps people who have
```

1   been detained with reentry into the community.  And it's

2   important because so many people who have been detained have

3   had their dreams crushed, and there's no belief or hope that

4   they can actually ever make it back into community.  And what

5   happens is, is that the society has pushed these people further

6   and further to the periphery of society where they feel that

7   there's no other option but for them to commit further crimes.

8           And the Focus Forward Project actually helps them

9   combat that and actually helps them see another way.  And in

10  this case, Mr. Letterio has grabbed that as a lifeline, and

11  that's really what it has been for him.  These programs are not

12  just ways to impress or to occupy his time, he's actually taken

13  these programs at MCC, the Focus Forward Project, and used them

14  as a lifeline, because he sees for the first time in over a

15  decade that he's actually able to support himself, support his

16  family by gainful employment by being a counselor, by being a

17  mentor, that these are actually paid positions, and it may not

18  have come by the way he envisioned or dreamed by being a

19  basketball star or using his degree in international business

20  administration, but he's found another way.

21          And it's unfortunate he had to come to this point and

22  be housed at the MCC for someone just to take a chance on him,

23  those MCC officials, the guards, for them to show him what he

24  could not get on the street, which was that he's not a failure,

25  he's not someone that can't obtain the dream just because he

1   can't do it or he wasn't able to do it in the way he

2   envisioned.

3          My sentencing submission details the struggles he's

4   had in life.  To put it simply, he was on the cusp of grabbing

5   his dream.  He was a semester away from graduating with an

6   advanced degree in international business, being able to apply

7   for jobs.  He was sought after by employers at his college.

8   Beyond that, he was star of the basketball team.  His limits

9   were endless.  And based upon where he came from, that was

10  truly extraordinary.

11         Unfortunately, based on the bad turn, all that was

12  taken away from him within a heartbeat.  It was -- he was right

13  there.  He was able to grab the brass ring, and it was just

14  snatched out of his hands.

15         And based upon that, he fell into this conspiracy.

16  Many people talk about losing a dream, and they say that you

17  have to overcome, you have to pull up by your bootstraps.  But

18  people often talk about it as a dream deferred.  They talk

19  about being able to overcome with the aid of a support system.

20  Mr. Letterio had none of those.

21         I'm not minimizing his criminal conduct, but his life

22  has provided a context for his bad decisions.  And it's a story

23  told by too many cases, too many times.  And in order to really

24  deal with what's happened, it takes a level of sophistication

25  that many people are not willing to express, in that it's easy

1    to say we want to be tough on crime, it's easy to say that

2    people who commit crimes are bad people and they should be

3    pushed onto the sideline, but not many people talk about what

4    happens or what makes a person or makes a person fall into a

5    situation like this.

6         In many ways, Mr. Letterio is a victim of bad luck,

7    for many ways, and he's also a victim of his own bad decisions,

8    and he's also a victim of the forces that prey upon so many

9    youth in communities like his, which is one of the poorest

10   congressional districts in the country.

11        Now, we would ask for a below guidelines sentence

12   because I would submit to this Court that the guidelines

13   approach is simply to ignore the humanity of it all.  It's

14   simply ignore what makes us us.

15        It's hard to quantify the human experience, and it's

16   hard to understand what happened to Mr. Letterio.  It's hard to

17   understand what it's like to have a dream that you've worked

18   for for over ten years snatched away right as you're reaching

19   the finishing line.  It's hard to look at your children as they

20   sleep and hear their stomachs grumbling because you can't use

21   your degree to pay for their food.  It's hard to watch a mother

22   wear shoes with holes in them and raggedy clothes, to keep the

23   lights on so you can do your homework and everybody's counting

24   on you to get this job to raise everybody up, and it's snatched

25   away from you right at the end of it.

1          And again, I'm not minimizing, but I would submit to

2     this Court that if that happened to any number of people, they

3     would be turned into lunatics.  It wouldn't be that easy to

4     overcome, and that it's not in a situation like Mr. Letterio

5     has.

6          So what he's been able to accomplish with his post

7     offense rehabilitation, we would submit, has been

8     extraordinary.  He's been able to obtain countless certificates

9     of completion at MCC, he's had personnel from BOP write him

10    letters on his behalf, he's had certificates of appreciation

11    from MCC, which I've never seen in my experience, he's had --

12    he's tutored, he's helped the prison guards, he's counseled

13    other inmates, he's cleaned up after other inmates' messes as

14    an orderly in the jail.  Truly, what he's been able to overcome

15    by this point, I would submit to this Court is extraordinary.

16         Again, Judge, he's made some bad decisions.  He

17    slipped up.  He fell into this conspiracy in many ways because

18    of life circumstances.  I would submit that doesn't make him a

19    bad person, I just -- I would submit that makes him human, and

20    the humanity of it is he's a person who's seen the other side,

21    he's rehabilitated himself, and it's not that he's looking for

22    a lower sentence because he doesn't feel he should be punished,

23    but it's just that he's been able to truly embody what the

24    Focus Forward Project has stands for, which is that there has

25    to be a means for reentry, and he's looking at it, and that's

1    the dream that he has, and that's the dream that is available

2    for him now.  And he's ready.  He's ready to take that next

3    step.

4         And for those reasons, we would ask that this Court

5    impose a sentence of time served.  Thank you, your Honor.

6         THE COURT:  Thank you, Mr. Scholar.

7         Ms. Feinstein, just a couple quick questions?

8         MS. FEINSTEIN:  Yes, your Honor.

9         THE COURT:  A couple arguments in the defendant's

10   submission I just wanted to get the government's reaction to

11   with respect to variance.

12        MS. FEINSTEIN:  Sure.

13        THE COURT:  One, Mr. Letterio's age as a basis for

14   conclusion of unlikelihood of recidivism.  Two, the conditions

15   in the MCC as a basis for a variance.

16        MS. FEINSTEIN:  I'll take -- the first question was

17   about his age.  You know, your Honor, that cuts both ways

18   sometimes.  I think in general it is true that, as people age,

19   they are less likely to commit crimes.  There have been studies

20   of that.  On the other hand, this is a defendant who was caught

21   a couple times, more than a couple times, has served real time

22   before on prior drug convictions, hasn't appeared to learn the

23   lesson, and just in 2016, last year, was continuing to engage

24   in this behavior.

25        Now, that's not to take away from some of the very

real rehabilitative work it appears that this defendant has
been doing since his incarceration, but I think that would be
our best response to that.  It's hard to say sometimes how age
plays into it.

        Your other question was about conditions in the MCC.
I don't have a direct response to that, your Honor.  We
certainly -- prison is not easy, but I don't know of any reason
why his experience would be any different than any other
defendant's that is currently at the MCC, so I don't believe
that's a reason to depart downwards, your Honor.

        THE COURT:  All right.

        Any final points, Mr. Scholar?

        Oh, I'm sorry.  I apologize.  Ms. Feinstein, I always
ask for some placement of one of the defendants in this case in
the overall sort of scheme so I can assess relative levels of
culpability.

        MS. FEINSTEIN:  Your Honor, this defendant is
certainly not among the most culpable here, he is not among the
very least, but he was only charged in a marijuana conspiracy.
He did have a managerial role so that puts him below the least
culpable, but I would say he's probably one of the hard to
quantify, about ten least culpable in this case, your Honor.

        THE COURT:  Okay, thank you.

        Anything further, Mr. Scholar?

        MR. SCHOLAR:  Just with respect to the conditions at

1  the MCC.  There have been some discussions I've had with

2  Mr. Letterio that he's described conditions that have just been

3  horrific.  And I think it becomes dangerous to engage in this

4  discussion about, well, other people haven't complained, but I

5  think not many people in the MCC have a degree, have an

6  advanced degree and can express basically what's happening day

7  in and day out.  I think because he's expressed these things,

8  he should be taken seriously.

9       THE COURT:  I will consider them in my overall

10 sentencing calculation.  I will also just strongly encourage

11 Mr. Scholar, even after sentencing, some direct communication

12 with the counsel at the MCC with any specific concerns, and you

13 can indicate that it has been raised as an issue here and Judge

14 Nathan encouraged that, so if there's a specific complaint that

15 can be addressed, I'll ask you to take that to the counsel

16 there, and you're welcome to CC the Court on any such

17 communications.

18       MR. SCHOLAR:  Thank you, your Honor.

19       THE COURT:  Mr. Letterio, you're under no obligation

20 to make a statement, sir, but if you'd like to, you may do so

21 now.  If you'll pull up the mic.  Thank you.

22       THE DEFENDANT:  Good morning, your Honor.

23       THE COURT:  Good morning.

24       THE DEFENDANT:  Thank you for the chance to speak on

25 my behalf today.  As well I would like to thank Mr. Scholar for

 1    the work he's done on my case.  As well I would like to thank

 2    all my family, friends, loved ones, people who have come to

 3    support me in this situation.

 4            I've heard what the government has stated about me,

 5    I've heard even what Mr. Scholar has stated about me, but I

 6    feel like the only one who can truly express who I am would be

 7    myself, no one else.

 8            I know I've made mistakes in my life.  That I can

 9    agree to.  I'm human.  And I've had my ups and downs.  I've

10    battled with depression, I've battled with many different

11    things throughout my life.

12            When I first went up top -- when I first went up north

13    in 2008 and I came home 2009, I felt lost.  A lot of things I

14    had lost that I didn't know how to get back.  I went to work

15    programs, I tried to do things that would focus into the life

16    that I was trying to live before I even went into jail.  It's

17    felt like doors kept closing on me.

18            In that process, I came home with two children.  I

19    wasn't sure how I was going to support a family, which ended up

20    really leading into that family being broken apart because me

21    and their mother just couldn't stay afloat with a lot of

22    things, even though we ended up having a third child, which

23    only made situations worse, because now the finances were just

24    obsolete.

25            I praise her all the time because she stands on her

1    two feet, even while I was struggling.

2         But at the same time, I knew at one point I had to

3    make a change.  And I tried to focus my ways into finding

4    different things in my community that I could do to start

5    changing my life.  I thank Reverend Q and Pastor Tim because

6    they gave me that opportunity.  Even when I didn't see

7    something in myself, Pastor Tim's wife, Reverend Q, did.  It

8    took me a little while to even agree to even come aboard to

9    work with her, because she seen what I was doing in my

10   community with the children, coaching, and she kept asking me

11   like, "Why don't you be a mentor?"  I didn't feel I deserved

12   it.  I didn't feel like I had done anything in my life to be

13   that.

14        Then one day she finally convinced me, "Just go to the

15   meeting.  Just represent us in this meeting."  I went to 161st

16   and I sat along a panel of different people that was speaking

17   to youth that were at risks.  It kind of took me -- like at

18   a -- I was appalled kind of when I listened to other people,

19   but when I seen how they responded to me, I was taken back

20   because I seen the connection.

21        When the meeting was over, several of them pulled me

22   to the side because they understood who I was and where I was

23   trying to go with my life.

24        Yeah, I understand that regardless of what, people do

25   make mistakes, and the same way I teach my children, you have

1   to man up for your mistakes.  That's a fact.  I would never let

2   them get away with anything without them accepting their

3   responsibilities, admitting that they was wrong in doing

4   something.  But it's not about just what they've done wrong,

5   it's about what they do afterwards that determines truly who

6   they are.  And I state that to them all the time.  It takes

7   courage to change.  And if you're not willing to state that

8   courage, if you're not willing to have that courage then

9   there's no possibility to change.  But it also takes

10  opportunities.  And every time I've been given an opportunity

11  to show that I want to change, I've flourished in it.  Whether

12  it had been Reverend Q, whether it had been Pastor Tim, whether

13  it had been my counselor here.

14          Honestly, before I was in MCC, I don't think anybody

15  ever did the things that I did here.  My counselors spoke with

16  me once or twice and they seen that I had determination.  They

17  gave me the opportunity, they seen me tutoring people

18  one-on-one in my housing unit, they asked me if I would run a

19  class.  I went from just tutoring GED for a whole unit to

20  facilitating anger management within my unit.  When I found out

21  there was an issue where a lot of inmates weren't get bible

22  study classes, well actually, they weren't allowed to go to

23  church, I spoke with the secretary of the unit secretary, and

24  we implemented bible study classes within the unit.

25          Honestly, what I'm trying to point out is that no

1  matter what, if I'm given an opportunity, I'm gonna take full

2  advantage of it.  Not for myself as much as for other people.

3  That's what makes me feel more complete, when I know that I've

4  helped somebody else.

5      While I've been here, I've received letters from the

6  players that were on my teams.  I coached six different teams,

7  that's over 100 young adults down to little kids.  They've

8  asked me what prep schools they should go to, what colleges

9  they should apply to, should they go to different interviews on

10 this college or that college.  I'm sitting in a federal prison

11 getting letters like this, and it's making me still feel like

12 you've done something right, Tony, because somebody actually

13 cares about your decision, about how you would feel if they

14 went to this school or what they should do with their life.

15     I realize that I've made mistakes, but I feel like

16 with the opportunities, even speaking with people like Brett at

17 Focus Forward or Ms. Burns, I told them, I'm here to learn from

18 y'all so when I do get home I can learn from the different

19 mannerisms and the different ways that you facilitate your

20 classes in the same programs I was working with before.

21     I stay in constant contact with Reverend Q and Pastor

22 Tim to see if I could have my job back.  They have agreed with

23 that.  I've stayed in constant contact with Mr. Henderson from

24 Lead By Example.  He told me that upon my release I could come

25 see him about employment, as well as the tournament that I

1    coached in before, which is Future Talent Basketball League.

2         All I really want to do is just have the opportunity

3    now to get back even more, because I know that I'll be able to

4    support myself while still giving back.  There won't be me

5    having to worry about where the next dollar is coming from or

6    how can I help my children, how am I gonna get them school

7    clothes.  I have that foundation, and that's what anybody needs

8    when they're building is a foundation.

9         The support that I have from family and friends, as

10   you can see, is something that I hold dearly, and I love them

11   for being here because nobody really has to come support you

12   when you're in a situation like this.  But knowing that I have

13   that behind me, that gives me the drive to push forward even

14   more.  Thank you, your Honor.

15        THE COURT:  Thank you, Mr. Letterio.

16        All right, counsel.  Anything further?  Any reason why

17   sentence should not be imposed at this time?

18        MS. FEINSTEIN:  No, your Honor.

19        MR. SCHOLAR:  No, your Honor.

20        THE COURT:  As I've stated, the guideline range

21   applicable to this case is 63 to 78 months' imprisonment.

22        Under the Supreme Court's decision in Booker and its

23   progeny, the guideline range is only one factor that the Court

24   must consider in deciding the appropriate sentence.  I'm also

25   required to consider the other factors set forth in 18 U.S.C.,

1    Section 3553(a).  These include the nature and circumstances of

2    the offense, and the history and characteristics of the

3    defendant, the need for the sentence imposed to reflect the

4    seriousness of the offense, to promote respect for the law and

5    to provide just punishment for the offense, to afford adequate

6    deterrence to criminal conduct, to protect the public from

7    further crimes of the defendant, to provide the defendant with

8    needed educational or vocational training, medical care, or

9    other treatment.

10            I am to take into account the kinds of sentences

11    available, the guideline range, any pertinent policy statement,

12    the need to avoid unwarranted sentence disparities among

13    defendants with similar records who have been found guilty of

14    similar conduct, and the need to provide restitution to any

15    victims of the offense.

16            I am to impose a sentence sufficient but no greater

17    than necessary to comply with the purposes I've just described.

18    I have given substantial thought and attention to the

19    appropriate sentence in this case in light of the 3553(a)

20    factors and the appropriate purposes of sentencing as reflected

21    in that statute.

22            Mr. Letterio does stand convicted of what is a serious

23    offense.  Specifically, he sold marijuana, and did so along

24    with members and associates of Big Money Bosses, which is a

25    violent street gang that controlled a section of the Bronx on

1    White Plains Road.  BMB trafficked in narcotics, including

2    cocaine, marijuana, and prescription pills.  It also kept

3    firearms and engaged in acts of violence, including shootings,

4    stabbings, and gang assaults.  BMB does have a violent cultural

5    norm around snitching or cooperating in retaliation against

6    those who do.  This is a gang that ravaged the areas it

7    occupied with dangerous drugs and violence.

8            Now, Mr. Letterio is not a member of that gang, but he

9    did, by his own admission, participate in the selling of

10   narcotics along with those involved in the gang.  He did so as

11   a manager in that he directed at least one person, specifically

12   Rye Thomas, with respect to marijuana sales.  As I've said,

13   that was by his own admission, and there are text messages that

14   do seem to give some color to that direction.  Other messages

15   suggest Mr. Letterio's expression of frustration with

16   individuals who may be cooperating with law enforcement.

17           Given this description of Mr. Letterio's role in this

18   conspiracy, a serious sentence is warranted to provide just

19   punishment, deter Mr. Letterio and others, promote respect for

20   the law, and to protect the public from further crimes of the

21   defendant.

22           Now, I do think this factor of deterrence is

23   particularly important here as this is not Mr. Letterio's first

24   offense.  He does have multiple prior convictions related to

25   narcotics trafficking.  Despite punishment in those instances,

Malcolm

1   Mr. Letterio was not sufficiently deterred and has repeated his

2   involvement in the drug conspiracy.  Thus, a serious sentence

3   is warranted to deter Mr. Letterio and protect the public from

4   further crimes of the defendant.

5          Now, of course, I must and I do take into account the

6   history and characteristics of this defendant.  As a

7   preliminary matter, I note that Mr. Letterio pled guilty to

8   this offense, and he did so early and with acceptance of

9   responsibility.  There is no suggestion of his own involvement

10  in violence related to this gang activity or otherwise.

11         Moreover, there are strong indications in the record

12  that Mr. Letterio is prepared to put this kind of criminal

13  activity behind him.  This is important to me.  For example, I

14  am greatly encouraged to see that Mr. Letterio has participated

15  in a substantial number of education courses offered at MCC,

16  maybe every one, Mr. Scholar, is that --

17         MR. SCHOLAR:  I think so, Judge.

18         THE COURT:  Every one.  That's impressive.  He's

19  tutored other inmates who are clearly grateful for his

20  commitment and encouragement, and he is learning to be a

21  counselor, and has obviously made a very strong impression on

22  the folks at Focus Forward and --

23         MR. SCHOLAR:  Lead By Example.

24         THE COURT:  -- Lead By Example -- thank you -- which

25  I'm encouraged to see.

1          And there's an individual from Focus Forward --

2    multiple individuals here today, and I did receive letters from

3    them, as well.

4          Additionally, I do take into account as part of my

5    assessment of the history and characteristics of this defendant

6    the difficult childhood of poverty that Mr. Letterio endured.

7          Mr. Letterio, you're obviously a very smart individual

8    and you've valued schooling.  You attended basketball on a

9    scholarship, but when a knee injury ended that possibility, you

10   lost your scholarship, and no doubt this did have significant

11   impact on your employment prospects and opportunities.

12         Of course, even when faced with difficult

13   circumstances, selling drugs and doing so in connection with a

14   violent street gang is never an answer to such circumstances.

15   Those are choices that have negative impact, of course, on you

16   and your family by separating you from them.  It is certainly

17   my hope and expectation that Mr. Letterio has learned and is

18   learning that lesson.

19         I also take into account Mr. Letterio's substantial

20   community ties.  The letters from his many friends and family

21   members, many of whom are here today, describe him as a devoted

22   father and a caring and generous friend and community member.

23   This is encouraging as it is certainly my hope and expectation

24   that this support will assist Mr. Letterio upon his release and

25   reentry into the community and that these many friends and

1   family members will continue to participate positively in

2   Mr. Letterio's life following his release to help ensure that

3   he does make the better decisions that he's on the path toward

4   now.

5          Defense counsel, as I noted earlier, has encouraged me

6   to consider the sentences that Mr. Letterio has served in state

7   facilities for related conduct which will not be credited by

8   the BOP.  I guess we didn't discuss this earlier.  My basic

9   view is that that fact of the underlying conduct is taken into

10  account by the lack of criminal history points.  None are being

11  applied here despite those earlier sentences, so I won't

12  subtract the time in any way, but I do take it into account in

13  my overall calculations.

14         Defense counsel also urges consideration of the harsh

15  conditions in the MCC, as well as Mr. Letterio's age, which

16  counsel contends -- I believe your 36, Mr. Letterio?

17         THE DEFENDANT:  Yes, your Honor, I am.

18         THE COURT:  All right -- which defense counsel

19  contends is old enough to suggest the lack of recidivism is

20  likely.  I think there's some merit to that, although it can

21  cut both ways.  There is a lot to give me hope that

22  Mr. Letterio is on a path to better choices, but I do take into

23  account these factors, though they don't have a substantial

24  impact on my sentencing conclusion.

25         I also strive to avoid unwarranted sentence

1    disparities, both with respect to codefendants in this case as

2    well as others more generally who engage in similar conduct,

3    though, of course, all sentencing conclusions are, at base,

4    individualized.

5              In sum, although I am convinced that a serious period

6    of incarceration is necessary in this case, I will

7    significantly vary downward from the guidelines in light of the

8    factors that I've discussed.  I'll now state the sentence I

9    intend to impose.

10             Mr. Letterio, will you please rise?

11             It is the judgment of this Court that you're remanded

12   to the custody of the Bureau of Prisons for 24 months, to be

13   followed by a period of three years of supervised release.

14             You may be seated.

15             During your term of supervised release, the standard

16   conditions apply.

17             In addition, you'll be subject to the following

18   mandatory conditions:

19             You shall not submit another federal, state, or local

20   crime.  You shall not illegally possess a controlled substance

21   or firearm or destructive device.

22             I will impose a special condition requiring drug

23   treatment and testing.  You shall cooperate in the collection

24   of DNA as directed by the probation officer.

25             In addition, the following special conditions apply:

1      You'll participate in an outpatient treatment program

2   approved by the probation officer.  This term is further

3   outlined on page 30 of the presentence report.  You'll also be

4   subject to the search term outlined on page 30 of the

5   presentence report.

6      You will report to the nearest probation office within

7   72 hours of release, and I do recommend that you be supervised

8   in your district of residence upon release.

9      I do want to strongly encourage upon release,

10  Mr. Letterio, the continued participation with Focus Forward or

11  a comparable program.  That involvement is critical to my

12  assessment of your reentry path, and I'm optimistic that your

13  involvement there will be important to you and important to the

14  individuals who you help counsel.

15     Ms. Feinstein, nothing here to consider regarding

16  forfeiture or restitution?

17     MS. FEINSTEIN:  No, your Honor.

18     THE COURT:  I will waive the fine because I don't

19  believe that you have the ability to pay the fine.

20     I am imposing a mandatory special assessment of $100,

21  which shall be due immediately.

22     Does either counsel know of any legal reason why the

23  sentence should not be imposed as stated?

24     MS. FEINSTEIN:  No, your Honor.

25     MR. SCHOLAR:  Your Honor, would you consider

1    recommending Mr. Letterio for the residential drug program?

2          THE COURT:  I will.

3          MR. SCHOLAR:  Thank you, your Honor.  Nothing further.

4          THE COURT:  All right.  Sentence as stated is imposed.

5    I do find the sentence is sufficient but not greater than

6    necessary to satisfy the sentencing purposes I've described

7    earlier.

8          Mr. Letterio, when you are released and on supervised

9    release you'll have the guidance and support of the probation

10   department.  As you re-establish your day-to-day life, during

11   your three-year period of supervised release, I do encourage

12   you to take advantage of those resources as the people in

13   probation are committed to helping you succeed.

14         That said, I must caution you that you must comply

15   strictly with all of your conditions of supervised release.  If

16   you are brought back before me for a violation of any of those

17   conditions, I may sentence you to another term of imprisonment.

18   My sentencing conclusion and substantial variance here were

19   dependent in large measure upon my assessment that the

20   rehabilitation path that you're on is a positive one, and I

21   hope and expect that your adherence to all conditions of

22   supervised release during your period of supervision will help

23   demonstrate that I've made an appropriate judgment in that

24   regard.

25         I will take defense counsel's recommendation and

1    recommend Mr. Letterio for the residential drug treatment

2    program for consideration and evaluation for placement in that.

3              Any designations regarding location, Mr. Scholar?

4              MR. SCHOLAR:  We would ask that it be recommended that

5    he be designated as a facility as close to New York as possible

6    so he can see his friends and family.

7              THE COURT:  For that basis, I do make that

8    recommendation to the Bureau of Prisons.

9              Ms. Feinstein, are there any remaining counts or

10   underlying indictments that need to be dismissed at this time?

11             MS. FEINSTEIN:  There are your Honor.  We move to

12   dismiss all of those counts.

13             THE COURT:  Motion is granted.  All remaining counts

14   or underlying indictments are dismissed.

15             Mr. Letterio, I see no basis for an appeal, but I am

16   required to inform you of your appellate rights.  To the extent

17   that you've not given up your right to appeal your conviction

18   and sentence through your plea of guilty and the agreement that

19   you entered into with the government in connection with that

20   plea, you do have the right to appeal.  If you're unable to pay

21   the cost of an appeal, you may apply for leave to appeal in

22   forma pauperis.  The notice of appeal must be filed within 14

23   days of the judgment of conviction.

24             Counsel, is there anything else that I can address at

25   this time?

1          MS. FEINSTEIN:  Not from the government, your Honor.

2    Thank you.

3          MR. SCHOLAR:  Nothing from the defense.

4          THE COURT:  Thank you.

5          Mr. Letterio, good luck to you.

6          We're adjourned.

7          (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25